UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                   No. 09-CR-00499 MV

STANLEY HENDERSON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the government's Motion to Authorize Payment from Inmate Trust Account. Doc. 45. As part of the briefing, Mr. Henderson filed an Unopposed Motion for Leave to File a Sur-Reply. Doc. 50. The Court will **GRANT** Mr. Henderson's Motion for Leave and has considered his sur-reply in ruling on the government's Motion to Authorize Payment. Having carefully considered the briefs, relevant law, and being otherwise fully informed, the Court finds that the government's Motion to Authorize Payment from Inmate Trust Account is not well-taken and will be **DENIED**.

## FACTUAL BACKGROUND

On August 10, 2009, Stanley Henderson pled guilty [Doc. 35] to a two-count Information [Doc. 32] charging him with Voluntary Manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, and Discharge of a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).

These charges stemmed from the shooting of Julia Nathaniel on January 22, 2009. Presentence Investigation Report at ¶ 9, *United States v. Stanley Henderson*, 09-CR-499-JC (Nov. 20, 2009) [hereinafter PSR]. After his arrest, Mr. Henderson told officers that, on the day of her death, Ms. Nathaniel had "showed up at his mother's house at approximately 2:00 am" with a

1

group of other people. *Id.* at ¶ 15. He allowed Ms. Nathaniel to stay but asked the others to leave. *Id.*

> The defendant advised that he was intoxicated at the time, and had a difficult time remembering everything that had occurred. He did recall having a violent argument with Ms. Nathaniel . . . . The defendant stated he then blacked out and his next memory was kneeling by Ms. Nathaniel, who was lying outside the front door of his mother's residence. The defendant observed she was bleeding heavily from the area of her right hip . . . . The defendant then used his cell phone to call for an ambulance. The defendant advised he then fled from the scene, because he was afraid he would be shot by the Navajo Police when they arrived.

*Id.* at ¶ 16. When officers arrived, Ms. Nathaniel was dead. *Id.* at ¶ 11. She had been shot just above the right buttock, and the bullet had crossed through her lower abdomen and torn the femoral artery in her left leg. *Id.* at ¶ 9. A .22 caliber rifle was found just inside the front door of Mr. Henderson's mother's house, and several .22 caliber casings were recovered from the area surrounding Ms. Nathaniel's body. *Id.* at ¶ 12.

Mr. Henderson was sentenced to 198 months imprisonment and 3 years of supervised release by Judge John Edwards Conway. Doc. 42 at 2. He was ordered to pay restitution under the Mandatory Victim Restitution Act of 1996. *Id.* at 5. Specifically, Mr. Henderson was ordered to pay $3,266.39, with $2,508.00 due to the Navajo Nation and $758.39 due to Jennifer Whitethorne.[1] *Id.* The court specified that "[t]he defendant will pay $50 per month," but the Judgment also provided that the total amount was due "[i]n full immediately." *Id.* (Fig. 1).

---

[1] The PSR indicates that burial expenses were covered by the Navajo Nation in the amount of $2,508.00 while Ms. Whitethorne—Ms. Nathaniel's daughter—requested restitution for other costs associated with the funeral. PSR at ¶ 23. Ms. Whitethorne's costs were outlined in the PSR as follows:

| Desert View Funeral Home | $83.00 |
|---|---|
| Walmart (Clothing for funeral) | $96.88 |
| Broadway Gifts and Flowers | $107.00 |
| Walmart (Carnations) | $10.70 |
| Target (Clothing for funeral) | $28.32 |
| Valley Trading Company (Gasoline) | $30.00 |

**Figure 1: Excerpt of Judgment**

```
AO 245B (Rev.12/03) Sheet 5, Part A - Criminal Monetary Penalties                    Judgment - Page 5 of 5
```

Defendant: **Stanley Henderson**
Case Number: **1:09CR00499-001JEC**

### CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments.
☐ The Court hereby remits the defendant's Special Penalty Assessment; the fee is waived and no payment is required.

| Totals: | Assessment | Fine | Restitution |
|---|---|---|---|
| | $200 | $0 | $3,266.39 |

### SCHEDULE OF PAYMENTS

Payments shall be applied in the following order (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.
Payment of the total fine and other criminal monetary penalties shall be due as follows:
The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.
A  ☒  In full immediately; or
B  ☐  $ immediately, balance due (see special instructions regarding payment of criminal monetary penalties).

**Special instructions regarding the payment of criminal monetary penalties:** Criminal monetary penalties are to be made payable by cashier's check, bank or postal money order to the U.S. District Court Clerk, 333 Lomas Blvd. NW, Albuquerque, New Mexico 87102 unless otherwise noted by the court. Payments must include defendant's name, current address, case number and type of payment.

**Pursuant to the Mandatory Victim Restitution Act, it is further ordered that the defendant will make restitution to the Clerk of the Court, Attn: Intake, Case No. 1:09CR00499-001JEC, 333 Lomas NW, Suite 270, Albuquerque, NM 87102. The restitution will be paid in the amount $3,266.39, in the following amounts: $2,508 is outstanding and due to The Navajo Nation. $758.39 is outstanding and due to Jennifer Whitethorne. The defendant will pay $50 per month. Court waives interest and penalties.**

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be made as directed by the court, the probation officer, or the United States attorney.

Mr. Henderson is currently incarcerated at FTC Oklahoma City; his projected release date is February 24, 2023. Doc. 45 at 1. He is 70 years old. PSR at 1. Mr. Henderson has paid $25 in restitution per quarter, with a balance of $2,225.00 already paid and $1,041.39 outstanding. Doc. 49 at 5; Doc. 45 at 1; *see also* Doc. 48 at 2. He is on track to pay restitution in full by the end of

---

| Big R (Clothing for funeral) | $42.79 |
|---|---|
| Safeway (Gasoline) | $20.00 |
| Circle W (Gasoline) | $29.00 |
| Jewelry for burial | $310.70 |

*Id.*

his prison term and is participating in the Bureau of Prisons' Inmate Financial Responsibility Program. Doc. 48 at 1–3.

As of June 8, 2021, Mr. Henderson had approximately $960.99 in his Bureau of Prisons (BOP) inmate trust account.[2] Doc. 45 at 2. The United States therefore requested "an Order authorizing the Bureau of Prisons to remit to the Clerk of Court all funds held in the inmate trust account . . . as payment towards the criminal monetary penalties imposed in this case." *Id.* at 1.

## LEGAL BACKGROUND

### I. Enforcing Restitution Generally

Mr. Henderson is obligated to pay restitution under the Mandatory Victims Restitution Act of 1996 (MVRA), which is codified at 18 U.S.C. § 3663A. Doc. 42 at 5. Section 3664 of Title 18 discusses the procedures available for the enforcement of an MVRA-based restitution order, stating that "[a]n order of restitution may be enforced by the United States" in three ways: (A) "in the manner provided for in subchapter C of chapter 227," (B) in the manner provided for in "subchapter B of chapter 229 of this title," or (C) "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A). Thus, an order of restitution may be enforced through several different methods.

### A. Subchapter C of Chapter 227 (18 U.S.C. § 3572)

Subchapter C of chapter 227, also known as 18 U.S.C. § 3572, establishes an avenue for enforcement in the case of delinquent fines or restitution. *See* 18 U.S.C. § 3572(h)–(i) ("A fine or payment of restitution is delinquent if a payment is more than 30 days late . . . . A fine or payment of restitution is in default if a payment is delinquent for more than 90 days. Notwithstanding any

---

[2] Although neither party identifies the source of these funds, the government notes that the funds initially totaled $1,200.00, the amount of the first round of COVID-19 stimulus checks sent out in the spring of 2020.

installment schedule, when a fine or payment of restitution is in default, the entire amount of the fine or restitution is due within 30 days after notification of the default, subject to the provisions of section 3613A.").

In this case, the government is not seeking to collect payment under 18 U.S.C. § 3572. *See* Doc. 49 at 5–6 (noting that "additional steps" would need to be taken for collection under these provisions and concluding that "collection under 18 U.S.C. 3664(n) appears to be [the] more appropriate remedy."). Indeed, the government "has not submitted any records of defendant's trust account or otherwise provided any information concerning deposits to and restitution payments from that account. Accordingly, there is no basis to compel payment by defendant to cure a violation of the restitution judgment." *United States v. Shaw*, No. 05-20073-JWL, 2021 WL 3144836, at *1 (D. Kan. July 26, 2021).

### B. Subchapter B of Chapter 229 (18 U.S.C. § 3613)

Subchapter B of chapter 229, also known as 18 U.S.C. § 3613, establishes civil remedies for the satisfaction of restitution orders. *See* 18 U.S.C. § 3613(c) ("[A]n order of restitution made pursuant to section[] . . . 3663A . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."). The Tenth Circuit has explained that, when 18 U.S.C. § 3613 is invoked as a basis for a placing a lien on a defendant's property, courts must apply a two-part test, asking "what rights under state law, if any, the taxpayer has in the asset," and then asking whether, under federal law, "those state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *United States v. Wilhite*, 774 F. App'x 478, 484 (10th Cir. 2019) (internal quotations omitted).

5

Although the government invokes 18 U.S.C. § 3613 as part of its briefing in this case, the government's motion does not address either prong of the two-part *Wilhite* test. Nor has the government complied with the Federal Debt Collection Procedures Act (FDCPA), as it must if it seeks to enforce its claim under Section 3613. *See United States v. Villongco*, No. CR 07-009 (BAH), 2016 WL 3747508, at *6 (D.D.C. July 11, 2016); *see also United States v. Cabral*, No. CR 11-224 (BAH), 2017 WL 2562295, at *3 (D.D.C. June 13, 2017). Ultimately, then, the Court finds that the government cannot seek to collect payment under 18 U.S.C. § 3613 at this time.

### C. Other Available and Reasonable Means (18 U.S.C. § 3664(n))

Thus, the government is seeking to proceed with the collection of restitution by other "available and reasonable means." 18 U.S.C. § 3664(m)(1)(A). In this case, the government has specifically made its request under 18 U.S.C. § 3664(n). *Id.*[3] This statutory provision provides as follows:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n). The narrow question before the Court, then, is whether 18 U.S.C. § 3664(n) provides a means of collection in Mr. Henderson's case.

Section 3664(n) does not, on its face, contain language creating a cause of action. However, a number of district courts have recently compelled payments from inmate trust accounts under this statutory provision. *See, e.g.*, *Shaw*, 2021 WL 3144836, at *1; *United States v. Craddock*, No. 15-20003-01-JWL, 2021 WL 3144818, at *2 (D. Kan. July 26, 2021); *United States*

---

[3] In its Reply, the government notes that it could also seek collection under 18 U.S.C. § 3664(k). *See* Doc. 49 at 5. However, as was the case with a potential remedy under 18 U.S.C. § 3572, the government does not go so far as to request a remedy under this subsection, noting that "additional steps," including victim notification, would need to be taken. *Id.*

6

*v. Vaughan*, No. 505-CR-40157001-JAR, 2021 WL 2206499, at *2 (D. Kan. June 1, 2021); *United States v. Caldwell*, No. 2:03-CR-00696-DAK, 2021 WL 568822, at *2 (D. Utah Feb. 16, 2021). In addition, the Tenth Circuit has affirmed two district court orders premised on Section 3664(n). *See United States v. Thornbrugh*, 764 F. App'x 655, 657 (10th Cir. 2019) (unpublished); *United States v. Elwood*, 757 F. App'x 731, 736 (10th Cir. 2018) (unpublished). Thus, this Court concludes that Section 3664(n) does provide a cause of action potentially allowing the government to collect funds from Mr. Henderson's inmate trust account.

### D. Parties' Arguments

In his Response, Mr. Henderson seemingly conceded that Section 3664(n) provided the government with a cause of action; however, he argued that this Court could not issue an order allowing the government to collect the $960.99 from his inmate trust account under Section 3664(n) because doing so would impermissibly exceed the bounds of the original restitution order issued by Judge Conway. Doc. 48 at 1–2. In making this argument, Mr. Henderson relied heavily upon *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015).

The government's Reply argued that Mr. Henderson's case was distinguishable from *Martinez* for three reasons: First, "unlike the Defendant in *Martinez*, Mr. Henderson is currently incarcerated." Doc. 49 at 1. Second, *Martinez* involved 18 U.S.C. § 3613, not 18 U.S.C. § 3664(n). *Id.* at 2. And third, "Mr. Henderson's restitution debt was ordered 'due immediately' unlike the judgment in *Martinez*." *Id.* at 3.

Mr. Henderson then filed an Unopposed Motion for Leave to File a Sur-Reply [Doc. 50], which the Court hereby **GRANTS**.[4] In his sur-reply, Mr. Henderson made two arguments. First,

---

[4] "The filing of a surreply requires leave of court." D.N.M. LR–CR. 47.8(b). "The purpose of a surreply is to afford 'the nonmoving party . . . an opportunity to respond to new material raised for the first time in the movant's reply." *United States v. Bruce*, No. 1:18-CR-00464-JCH, 2018 WL 3232353, at *1 (D.N.M. July 2, 2018) (Herrera, J.) (quoting *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005)). "'[N]ew

7

he argued that "the government ha[d] failed to prove that [Mr. Henderson's] funds meet the immediate forfeiture threshold of 'substantial resources.'" Doc. 50 at 6. Second, he argued that the provision in his Judgment specifying that his restitution payments were due immediately did not distinguish his case from *Martinez*, and that the inclusion of a payment schedule "reflect[ed] the sentencing court's 'determination of how and when' the individual 'should pay restitution after evaluating his financial condition.'" *Id.* at 9 (quoting *Martinez*, 812 F.3d at 1206).

## DISCUSSION

**I.     Mr. Henderson Has Received Substantial Resources**

Section 3364(n) only provides an avenue for the collection of outstanding restitution when a person obligated to provide restitution has received "substantial resources from any source." 18 U.S.C. § 3664(n). The statute does not define the term "substantial resources." *Id.* However, the Tenth Circuit has reasoned that "substantiality isn't measured in absolute terms alone," and that "resources are substantial if they 'positively exceed the sums needed by a criminal defendant to satisfy the financial obligations established at the time of sentencing.'" *Elwood*, 757 F. App'x at 736. The Tenth Circuit has also affirmed a district court's order compelling payment of $3,172.78 in *partial* satisfaction of a person's restitution obligation. *See Thornbrugh*, 764 F. App'x at 656. Relying on this decision, at least one district court has defined "substantial resources" as "accumulated funds of multiple thousands of dollars." *Craddock*, 2021 WL 3144818, at *2.

The $960.99 held in Mr. Henderson's inmate trust account will not fulfill his entire outstanding restitution obligation; nor does he have "accumulated funds of multiple thousands of

---

material' means 'new evidence and new legal arguments' raised in the movant's reply brief." *Id*. Here, the Court grants Mr. Henderson's Motion for Leave to File a Sur-Reply so that he can address the government's arguments that the *Martinez* case is distinguishable on the basis that Mr. Henderson's restitution order provided that $3,266.39 was due "in full immediately." The Court also notes that the Motion for Leave to File a Sur-Reply was unopposed. Doc. 50 at 1.

8

dollars." *Id.* Nevertheless, this Court will find that the funds currently held in Mr. Henderson's inmate trust account constitute "substantial resources" for purposes of 18 U.S.C. § 3664(n). The Court makes this finding because the remittance of these funds would satisfy a large portion of Mr. Henderson's outstanding restitution obligation. *See supra* at 4.

**II.     The Judgment Imposed in Mr. Henderson's Case Does Not Allow for Collection Under 18 U.S.C. § 3664(n)**

In the 2015 case *United States v. Martinez*, the Tenth Circuit held that "[t]he government has statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms." *Martinez*, 812 F.3d at 1207. The government had sought garnishment of Mr. Martinez's retirement accounts under 18 U.S.C. § 3613, and he argued that the garnishment exceeded what he owed in installments under the restitution order. *Id.* at 1201–02. His Judgment had "contain[ed] two boxes," with one box stating that restitution was due "[i]n full immediately" and one box stating "$300 immediately, balance due (see special instructions regarding payment of criminal monetary penalties)." *Id.* at 1204. "The district court left the first box blank and checked only the second box," providing a schedule of payments that required Mr. Martinez to pay "25% of his net disposable income." *Id.* The Tenth Circuit found that "[a]s long as Mr. Martinez complies with this order, the full restitution amount would not become due . . . . The order does not impose any immediately enforceable obligation to pay the full restitution amount." *Id.* at 1204, 1207.

As discussed above, the government has made three arguments as to why *Martinez* is distinguishable. *Supra* at 7. None of these arguments are availing. First, the Court does not believe that Mr. Henderson's custodial status should control the outcome of this motion, having found no statutory basis for making such distinctions among those who are subject to restitution orders.

9

Second, the Court does not believe that *Martinez* can be distinguished because it involved 18 U.S.C. § 3613 and not 18 U.S.C. § 3664(n). As previously described, these are separate enforcement statutes, and so if the *Martinez* holding had been based solely on the language of 18 U.S.C. § 3613, the government might have had a strong argument. However, as the *Martinez* court explained, its holding was based on a different statutory provision altogether: 18 U.S.C. § 3664(f)(2), which reads as follows:

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2). As is apparent from its text, Section 3664(f)(2) is not an enforcement statute, but applies in *all cases* involving orders of restitution. The *Martinez* court reasoned that, based upon this statute, "it is the district court—not the government—that determines how a defendant is to pay restitution," and so "the government can enforce only what the district court has ordered the defendant to pay" in its restitution order. *Martinez*, 812 F.3d at 1202. This reasoning is equally persuasive whether enforcement is sought under 18 U.S.C. § 3613 or 18 U.S.C. § 3664(n).

Of course, the government has also argued that Judge Conway *did* order Mr. Henderson to pay the $960.99 that it seeks to collect, noting that "Mr. Henderson's restitution debt was ordered 'due immediately' unlike the judgment in *Martinez*." Doc. 49 at 1. And, indeed, there are district court cases supporting the government's position that *Martinez* only applies when a district court has *not* chosen to make restitution due in full immediately. *See, e.g.*, *United States v. Daniels*, No.

10

15-CR-0096001-CVE-TLW, 2017 WL 1538457, at *3 (N.D. Okla. Apr. 28, 2017). However, the Tenth Circuit's analysis more commonly hinges on whether a district court has "clearly evinced its intent both at sentencing and in its judgment that [a defendant] immediately satisfy the full restitution amount." *Elwood*, 757 Fed. App'x at 735. In order to evaluate the government's third argument, then, this Court must determine whether Judge Conway clearly intended that Mr. Henderson immediately satisfy the full restitution amount of $3,266.39.

In some cases, a defendant has "an immediate obligation to satisfy the [restitution] award, but he may discharge that obligation by making payments over time." *Elwood*, 757 F. App'x at 736. This occurs when a defendant's Judgment specifies that restitution is "due immediately" but not "payable immediately." *Id.*; *see also United States v. Bedonie*, 317 F. Supp. 2d 1285, 1332 (D. Utah 2004), *rev'd on other grounds sub nom. United States v. Serawop*, 410 F.3d 656 (10th Cir. 2005).

Restitution awards which are due immediately but are not payable immediately are often imposed on indigent defendants. A hypothetical may help to clarify why this is the case. Say, for example, a federal district court is sentencing two defendants who each owe $5,000 in restitution. Defendant 1 is sentenced first. The court is obligated to consider each defendant's financial circumstances in crafting a restitution order,[5] and knows that Defendant 1 has a net worth of $1 million and could easily make her victim whole as soon as she is ordered. So, the court orders that restitution is due immediately *and* payable immediately. If Defendant 1 does not produce the

---

[5] Section 3664(f) of Title 18 expressly requires a district court to consider the financial resources and projected earnings of the defendant when specifying "the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f). The Tenth Circuit has held that, when a defendant cannot pay the full restitution award at the time it is imposed, the district court *must* set a schedule of payments; otherwise, the court is impermissibly "delegating the preparation of a payment schedule to the Bureau of Prisons and the probation office." *United States v. Overholt*, 307 F.3d 1231, 1255 (10th Cir. 2002).

$5,000, it is because she has decided not to comply with the court's order. When the court moves on to sentencing Defendant 2, however, it becomes apparent that Defendant 2's net worth is only $1,000. He cannot produce $5,000 immediately, but that is not because he wants to flout the court's authority: it is simply because he is poor. The court therefore orders that $5,000 is now due, but that Defendant 2 can discharge this obligation by paying $100 per month for 50 months. Defendant 2 will be in full compliance with the court's current order as long as he continues to make those payments.[6]

The district court should clearly specify on Defendant 2's Judgment that it intended to make the $5,000 restitution award due immediately but not payable immediately, and that the payment schedule it imposed is what we might call a "binding schedule." But what if the district court's language is not sufficiently clear? It is true that "[t]he standard criminal judgment form from the Administrative Office appear[s] to use [due immediately and payable immediately] interchangeably." *Bedonie*, 317 F. Supp. 2d at 1332. What happens if the court checks the standard box indicating that Defendant 2's obligation is due in full immediately, then simply writes in Defendant 2's payment schedule?

Unfortunately, the district court's mistake means that the court of appeals could interpret Defendant 2's Judgment as imposing a $5,000 obligation due immediately and payable immediately, but with a "back-up schedule of payments," in the event that Defendant 2 does not immediately pay his $5,000 obligation. *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018). However, courts of appeals do not automatically or mechanically decide that checking the

---

[6] The direct beneficiary of the restitution award (i.e. Defendant 2's victim) could, however, pursue her own collection efforts right away—for example, "by using the MVRA provision allowing the restitution award to [be] reduced to a civil judgment." *Bedonie*, 317 F. Supp. 2d at 1332. That civil judgment would impose an additional legal obligation on Defendant 2—an obligation that is not currently contemplated in Defendant 2's Judgment.

12

"due immediately" box automatically means that any payment schedule imposed is a back-up schedule. Indeed, when a reviewing court must decide whether a Judgment's payment schedule is binding schedule or a back-up schedule, it looks to the language used in the "special instructions" section of the Judgment, as well as to collateral documents such as plea agreements or sentencing transcripts. For example, in *Unites States v. Williams*, the Judgment at issue provided as follows:

> A ☒ Lump sum payment of $240,461.00 ($240,361.00/restitution; $100.00/special assessment) due immediately, balance due ... in accordance with ... F below ....
>
> F ☒ Special instructions regarding the payment of criminal monetary penalties:
>
> If restitution is not paid immediately, the defendant shall make payments of 10% of the defendant's quarterly earnings during the term of imprisonment; and
>
> If restitution is not paid in full at the time of release from confinement, the defendant shall make payments the greater of $100.00 per month or not less than 10% of the defendant's gross monthly income, as directed by the probation officer.

*Williams*, 898 F.3d at 1054. The Tenth Circuit ultimately decided that this language established a "back-up schedule," reasoning that, in his plea agreement, Mr. Williams had "agree[d] to pay restitution by making an immediate payment in full on or before the date set for sentencing" and "agree[d] to make payments as ordered by the Court" if he lacked the resources to make an immediate payment in full. *Id.* at 1053.

In this case, as in *Williams*, it is unclear whether Judge Conway intended to set a binding schedule or a back-up schedule for Mr. Henderson. *See* Fig. 1. Certainly, the language in Mr. Henderson's "special instructions" is less clear than in *Williams*; rather than using language conditional language regarding what might happen "*[i]f* restitution is not paid immediately" or "*[i]f* restitution is not paid in full at the time of release from confinement," the Judgment in Mr. Henderson's case uses unconditional language, with the special instructions indicating that "[t]he defendant *will* pay $50 per month." *Compare id.* (emphasis added) *with Williams*, 898 F.3d at

13

1054 (emphasis added). This language weighs in favor of finding that Mr. Henderson's Judgment imposes a binding schedule of payments.

Additionally, the Court looks to the Clerk's Sentencing Minutes. *See* Doc. 41 at 2. As Mr. Henderson's plea agreement is silent on the issue of a restitution schedule, and as neither party has submitted a sentencing transcript in this case, the Clerk's Sentencing Minutes are the best source of additional documentation regarding Judge Conway's order. The "Restitution" section of the Minutes states that "$2,508.00 is outstanding and due to The Navajo Nation, $758.39 is outstanding and due to Jennifer Whitethorne. The defendant will pay $50 per month. Court waives interest and penalties." *Id.* Though the Clerk's Sentencing Minutes would not and could not supersede a Judgment's clear instructions, the Judgment in Mr. Henderson's case is subject to two different interpretations; therefore, the statement in the Minutes that Mr. Henderson "will pay $50 per month" lends additional support to Mr. Henderson's argument that his restitution was only payable at a rate of $50 per month.

The Court finds, then, that Mr. Henderson's Judgment established a binding schedule of payments. Accordingly, *Martinez* governs the outcome of the motion; the Court cannot order the collection of the $960.99 because the Judgment "does not impose any immediately enforceable obligation to pay the full restitution amount" of $3,266.39. *Martinez*, 812 F.3d at 1207. In other words, the Court must deny the government's motion because the government has failed to demonstrate that the $960.99 it seeks is immediately payable.

It may be that, because Mr. Henderson was ordered to pay $50.00 per month and has only paid $25.00 per month, he is delinquent in his payments and collection under 18 U.S.C. § 3572 is appropriate. *See supra* at 3–5. However, the applicability of 18 U.S.C. § 3572 has not been squarely briefed, and so the Court declines to reach this issue.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the government's Motion to Authorize Payment from Inmate Trust Account is **DENIED**.

ENTERED this 11th day of August 2022.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE